UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 15-40-DLB-HAI

ANTHONY W. JONES, on behalf of
himself and those similarly situated                                    PLAINTIFF

vs.                          MEMORANDUM OPINION AND ORDER

L&G TRUCKING, LLC and EUGENE T. CALDWELL                    DEFENDANTS

********************

## I.      Introduction

This is an action brought by a truck driver against his employer for overtime pay under the Fair Labor Standards Act (FLSA).  The case turns on whether the Plaintiff falls under FLSA's motor carrier exemption, which in turn depends on whether Plaintiff's job duties could reasonably have involved interstate driving.  Plaintiff and Defendants marshal evidence that answers that question in two different ways.  As a result, material facts remain in dispute, and summary judgment is not warranted.

## II.     Factual and Procedural Background

Defendant L&G Trucking, LLC (L&G) is a trucking company that operates out of Rockcastle County, Kentucky.  (Doc. # 9 at ¶¶ 5-6).  Defendant Eugene T. Caldwell is the owner of L&G.  (Doc. # 25-3 at 4).  L&G "has several customers throughout the United States including customers in Berea, Kentucky."  (Doc. # 28-2 at ¶ 8).  "On an everyday basis, several of L&G's trucks and drivers are operating interstate throughout several

1

states."  (*Id.* at ¶ 5).

In February 2013, Plaintiff Anthony Jones was hired by L&G as a driver.  (Doc. # 38-1 at ¶ 5).  For the first six months of his employment, Jones "primarily was utilized to service the needs of L&G's Berea, KY customer base." (Doc. # 28-1 at ¶ 7).  Jones claims that he is owed overtime pay under the federal Fair Labor Standards Act (FLSA) for hours that he worked in excess of forty per week from February 17, 2013 to August 30, 2013.[1]  Defendants argue that Jones is exempt from FLSA because he was subject to the jurisdiction of the Department of Transportation (DOT) as an interstate driver.

According to Jones, he was hired by L&G to be "a shuttler at the Hitachi facility located in Berea, Kentucky."  (Doc. # 38-1 at ¶ 8).  Jones claims that L&G's head of operations, Chris Nelson, told Jones when he was hired that L&G "had just picked up the Hitachi facility in Berea, Kentucky as a new account and that they needed local drivers/shuttlers specifically to work at that site." (*Id.* at ¶ 9).  Each driver, including Jones, was "assigned a specific set route," and "[n]o driver was subject to performing any other duties or driving any other routes other than their assigned route unless they chose to do so." (*Id.* at ¶ 7).  "At all times between February 2013 and August 2013," Jones's "assignment was a local assignment, principally confined to shuttling trailers around to the various buildings all located at the Hitachi facility in Berea, Kentucky and other local facilities." (*Id.* at ¶ 13).  "In contrast to Defendants' over-the-road or long-haul drivers," the

---

1    Although Plaintiff styled his Complaint as a collective action under FLSA (Doc. # 1), the motions presently before the Court deal only with Jones's individual claim.  For that reason, the Court will not resolve in this Memorandum Opinion & Order whether other L&G employees are "similarly situated" or whether certification is warranted.  *See* 29 U.S.C. § 216(b).

2

"local drivers like [Jones] and the other shuttlers who worked at the Hitachi plant had no expectation of driving over-the-road routes or interstate routes." (*Id.* at ¶ 10). "For this reason, there was no discussion that [Jones] could be called upon to drive an interstate route." (*Id.*) Instead, local drivers like Jones could pick up interstate routes only if the routes were available and the driver volunteered. (*Id.* at ¶ 11). But "there were few opportunities to pick up additional work because all work was specifically assigned to the driver of each specific route." (*Id.* at ¶ 7). Jones claims that he did not volunteer for and did not drive an interstate route until August 30, 2013, when he volunteered to drive from Kentucky to St. Louis, Missouri. (*Id.* at ¶¶ 18, 19). Because Jones did not drive interstate routes, "neither [he] nor any of Defendants' other local drivers were required to keep a DOT-compliant log book," and there was no restriction on the number of hours he could work per week. (*Id.* at ¶¶ 14, 17). Timothy Philbeck, an employee of L&G from December 2012 to June 2013 who drove an interstate route from Berea, Kentucky to Seymour, Indiana, submitted a declaration corroborating Jones's claims. (Doc. # 38-3).

Defendants offer a different description of L&G's route assignments, the requirements of Jones's job, and the likelihood of interstate trips for a driver like Jones. According to Defendant Caldwell, L&G's owner, new drivers at L&G are "not hired for a specific route but, instead, all drivers are expected to operate as commercial truck drivers on any route that may be assigned to them." (Doc. # 28-2 at ¶ 6). Drivers like Jones "who serve the customer base in Berea, Kentucky are on call to perform any driving task that may be assigned to them including out of state routes." (*Id.* at ¶ 8). Such assignments are "not uncommon" for drivers in Berea, who may "be ordered by L&G to take a load of goods to an out of state destination." (*Id.* at ¶ 9). To the best of Caldwell's knowledge, "every

3

driver who has serviced the Berea area has been called upon and ordered to take an out of state load at some point during their employment." (*Id.* at ¶ 12). Caldwell asserts that taking out-of-state routes is *not* voluntary, claiming that "[a]ll drivers who serve the Berea area customers are informed that they are subject to being called upon to make an out of state run and that they are expected to comply with said order," and that if they do not comply with an order to drive an interstate route "the driver would be terminated." (*Id.* at ¶¶ 10, 14). Caldwell offers a different account of the timing (and ultimate destination) of Jones's out-of-state trip, asserting that "[w]ithin approximately three months of Anthony Jones's employment," Jones was ordered to take a load to Kansas City, Missouri for delivery, and that if he did not do so, he would have been fired. (*Id.* at ¶¶ 15-18). Caldwell further explained that all of L&G's trucks "are fully insured and licensed for purposes of all transportation both interstate and intrastate," and that L&G complied with DOT regulations in hiring Jones and other drivers because "regardless of where their route may be assigned," "each driver is subject to having to make an out of state run during their employment." (*Id.* at ¶¶ 19-20, 22). Nelson, L&G's head of operations, submitted an affidavit corroborating Caldwell's statements. In particular, Nelson emphasized that "[a]ll drivers who work in the Berea KY area are subject to being called upon to move out of state loads on a daily basis and it is not uncommon for such drivers to be ordered to do so on a frequent basis." (Doc. # 28-1 at ¶ 10). He also stated that "upon hire it was explained to Mr. Jones that as the need arose he would be called upon to perform other duties as a truck driver other than serving the Berea based customers including making out of state runs." (*Id.* at ¶ 7). Nelson agreed with Caldwell that "[w]ithin approximately 3 months of his initial employment, Mr. Jones was ordered to move a load of goods from Berea, KY to

Kansas City, MO," and that if Jones had not done so he would have been terminated. (*Id.* at ¶¶ 8-9). Nelson added that the goods Jones moved at the Berea site were "fully finished products consisting of shocks and struts" which Jones brought to a storage area, where the product remained "for only a short time prior to being delivered to the ultimate customer." (*Id.* at ¶¶ 13-15).

Plaintiff moved for summary judgment on his FLSA overtime claim. (Doc. # 25). Defendants responded (Doc. # 28) and, in an identical filing, cross-moved for summary judgment (Doc. # 29). Plaintiff moved to strike Defendants' cross-motion as untimely because the dispositive motion deadline had lapsed and moved to strike the identical response as procedurally improper because Defendants sought affirmative relief in a responsive brief (Doc. # 30). Plaintiff replied to Defendants' summary judgment response (Doc. # 38) and responded to Defendants' cross-motion (Doc. # 42). Defendants did not reply in support of their cross-motion. Defendants responded to the motion to strike (Doc. # 41) and Plaintiff replied (Doc. # 43). Plaintiff's motion for summary judgment, Defendants' cross-motion, and Plaintiff's motion to strike are ripe for the Court's review.

## III.   Analysis

### A.   Standard of Review

Summary judgment is appropriate when there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If there is a dispute over facts that might affect the outcome of the case under governing law, summary judgment is precluded. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the ultimate burden of persuading the Court that

there are no disputed material facts and that he or she is entitled to judgment as a matter of law. *Id.* Once a party files a properly supported motion for summary judgment by either affirmatively negating an essential element of the non-moving party's claim or establishing an affirmative defense, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252. Because the parties present cross-motions, the Court must "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004) (internal quotation marks omitted).

**B.    Plaintiff's Motion for Summary Judgment**

The FLSA requires covered employers to provide overtime pay to employees who work more than forty hours per week. 29 U.S.C. § 207. Plaintiff moves for summary judgment, arguing that he has satisfied all the requirements for a FLSA overtime pay claim. (Docs. # 25, 25-1). Defendants do not dispute (1) that Caldwell and L&G Trucking are covered under FLSA as "employers," (2) that L&G had an annual gross revenue in excess of $500,000 during the time period relevant to Jones's claim, or (3) that L&G's employees regularly handle L&G trucks that were manufactured outside the state of Kentucky, satisfying FLSA's interstate commerce prong. (Doc. # 25-1 at 6-11). Nor do Defendants dispute Plaintiff's calculation of overtime compensation of $4,672 or his entitlement to mandatory liquidated damages in the same amount. (*Id.* at 10-12); *see* 29 U.S.C. § 216(b). Instead, Defendants oppose summary judgment on the ground that Jones is exempt from

FLSA's overtime pay requirements under 29 U.S.C. § 213.

Exemptions under § 213 are "treated as affirmative defenses and the defendant bears the burden of proving entitlement to them." *Franklin v. Kellogg Co.*, 619 F.3d 604, 611 (6th Cir. 2010). Defendants assert this affirmative defense in their response to Plaintiff's summary judgment motion and their own cross-motion for summary judgment. (Doc. # 28 at 6, 11; Doc. # 29 at 6, 11). Plaintiff argues that Defendants have forfeited[2] the affirmative defense by not raising it in their Answer and that Jones is entitled to summary judgment as a result. (Doc. # 38 at 2-3, 5-6).

The first question, then, is whether Defendants in fact forfeited the affirmative defense. This question is critical because, as explained above, Defendants otherwise offer no response to Plaintiff's summary judgment motion. Although neither party mentions it, in their Answer, Defendants "assert all affirmative defenses available and incorporate the same herein by reference." (Doc. # 9 at ¶ 45). The Court is spared the tedious inquiry into whether such a boilerplate assertion is an adequate statement under Federal Rule of Civil Procedure 8(c) because in the Sixth Circuit, it is well established that a "failure to raise an affirmative defense by responsive pleading does not always result in [forfeiture]." *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993). Rather, "[a] district court may, in its discretion, allow a defendant to raise an affirmative defense for the first

---

2    The Court uses "forfeiture" instead of "waiver" to describe what can happen when a defendant fails to plead an affirmative defense. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted). Because failure to plead an affirmative defense under Rule 8(c) need not be intentional for a party to lose its right to raise the defense, "forfeiture" is the more precise term. *See Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 343 n.2 (D.C. Cir. 1997).

time in a motion for summary judgment if doing so does not result in either surprise or prejudice to the plaintiff." *Lauderdale v. Wells Fargo Home Mortg.*, 552 F. App'x 566, 573 (6th Cir. 2014). That comports with the purpose of Rule 8(c), which is "to give the opposing party notice of the affirmative defense and a chance to rebut it." *Moore*, 992 F.2d at 1445 (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Foundation*, 402 U.S. 313, 350 (1971)). "As a practical matter, courts may excuse the general rule of forfeiture when amendment is proper under Federal Rule of Civil Procedure 15(a)," which is "when justice so requires." *Hopkins v. Chartrand*, 566 F. App'x 445, 449 (6th Cir. 2014); Fed. R. Civ. P. 15(a)(2). That standard "reinforces the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 937 (6th Cir. 2004) (internal quotation marks omitted); *see also Moore*, 992 F.2d at 1445 ("Where the matter is raised in the trial court in a manner that does not result in unfair surprise . . . technical failure to comply precisely with Rule 8(c) is not fatal." (internal quotation marks omitted)).

Plaintiff argues that Defendants specifically disavowed this affirmative defense by denying that Jones was "engaged in commerce" within the meaning of 29 U.S.C. §§ 206 and 207. (Doc. # 1 at ¶ 7; Doc. # 9 at ¶ 7). Not quite. As discussed *infra*, pp. 10-17, the exemption Defendants invoke requires a reasonable likelihood that Jones would have driven his truck interstate. As Plaintiff acknowledges, the Answer's denial refers to "commerce" under FLSA, not the meaning of "interstate" in Defendants' claimed exemption. (*See* Doc. # 38 at 6 n.3). The concepts are not necessarily interchangeable. *See Baird v. Wagoner Transp. Co.*, 425 F.2d 407, 410 (6th Cir. 1970) ("While the parties have stipulated that they are engaged in interstate commerce for the purposes of the FLSA, such stipulation does not necessarily require a conclusion that their activities were in interstate

8

commerce for the purposes of the [motor carrier exemption].").  Moreover, Defendants' Answer denied that Plaintiff was a non-exempt Shuttle Driver and denied that his job did not involve the carriage of goods or materials in interstate commerce, consistent with an affirmative defense based on the exemption.  (Doc. # 1 at ¶¶ 8, 10; Doc. # 9 at ¶¶ 8, 10).  For those reasons, a blanket denial that Jones was "engaged in commerce" within the meaning of the FLSA does not make the belated assertion of this affirmative defense an unfair surprise for Plaintiff.

Plaintiff also claims in his motion to strike briefing that he "would be severely prejudiced if [Defendants] were allowed to interpose for the first time an affirmative defense regarding the motor carrier act exemption after the close of discovery and over a month after the dispositive motion deadline."  (Doc. # 43 at 3).  But Jones does not explain *how* he would be prejudiced.  Indeed, Jones had the opportunity to reply to Defendants' response *and* respond to their cross-motion.  (Docs. # 38, 42).  Jones also provided the Court with declarations from Plaintiff and another L&G employee, Philbeck, and excerpts from the deposition of Chris Nelson to rebut Defendants' affirmative defense.  (Docs. # 38-1, 38-2, 38-3; 42-1, 42-2, 42-4).  This is not a situation, like in *Hopkins v. Chartrand*, where defendants won summary judgment on a "glaring[ly]" incomplete factual record, after a FLSA exemption was raised for the first time at summary judgment.  566 F. App'x at 447.  Indeed, in this case, the factual record is sufficiently developed to reveal disputed material facts that preclude summary judgment for either side.  For those reasons, Plaintiff has not shown prejudice, and the Court will allow Defendants to raise their affirmative defense in response to Plaintiff's motion for summary judgment despite their failure to plead it in their Answer.

9

### C.    Plaintiff's Motion to Strike

There is one more procedural hurdle to clear before considering the merits of the summary judgment motions.  Plaintiff moves to strike Defendants' cross-motion as untimely and moves to strike the requests for affirmative relief in Defendants' identical response to Plaintiff's summary judgment motion as procedurally improper.   Although Defendants' cross-motion *is* untimely, once again, Plaintiff was not prejudiced.  Plaintiff requested that the cross-motion be stricken "to alleviate the time and expense that would be necessitated by drafting and filing a Memorandum in Opposition."  (Doc. # 30-1 at 1).  As mentioned, Defendants' cross-motion was identical to their response to Plaintiff's motion, meaning that any additional time and expense by Plaintiff in responding to the cross-motion was likely insignificant.  (Indeed, Plaintiff's reply in support of their motion for summary judgment and their opposition to Defendants' cross-motion were quite similar, though not identical.  (Docs. # 38, 42)).  Ultimately, Plaintiff's motion to strike does not affect the Court's decision on summary judgment, because the same factual disputes that prohibit summary judgment for Plaintiff would also prohibit summary judgment for Defendants.  Because there is no prejudice, the Court will deny Plaintiff's motion to strike Defendants' cross-motion.

### D.    The Motor Carrier Exemption

Exemptions to FLSA's overtime provisions "are to be narrowly construed against the employers seeking to assert them."  *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997) (internal quotation marks and alteration omitted).  "The employer bears the burden of proving that the exemption applies to the employee in question."  *Id.*  In this case, Plaintiff is entitled to summary judgment "unless the defendant can come forward with evidence at least creating a genuine issue of material fact as to whether [Jones] meets

10

each and every element of the exemption." *Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 578 (6th Cir. 2004). Because Defendants have identified genuine issues of material fact about whether Jones is exempt from FLSA's overtime provisions, Plaintiff's motion for summary judgment will be denied.

"[A]ny employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to [49 U.S.C. § 31502]" is exempt from FLSA's overtime requirements. 29 U.S.C. § 213(b)(1). The Secretary of Transportation's jurisdiction under 49 U.S.C. § 31502, the Motor Carrier Act, extends to employees of "a motor carrier." 49 U.S.C. § 31502(b)(1). Courts look to the Department of Labor's regulation interpreting the motor carrier exemption to FLSA, which has two requirements:

- The employer must be a motor carrier–a person "providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14); 29 C.F.R. § 782.2(a)(1).

- The employee must "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce." 29 C.F.R. § 782.2(a)(2).

*See also Benson v. Universal Ambulance Serv., Inc.*, 675 F.2d 783, 785 (6th Cir. 1982) (for motor carrier exemption to attach, "employer must be (1) a carrier (2) in interstate commerce.").

The parties agree that L&G is a "motor carrier" and that the small vehicle exception does not apply. (Doc. # 28 at 12; Doc. # 38 at 8). The parties also agree that Jones, as

a driver, was directly engaged in safety-affecting activities. (Doc. # 28 at 12-13; Doc. # 38 at 8). The only contested issue is whether Jones's driving was sufficiently related to interstate commerce to bring him within DOT's jurisdiction, and thus the motor carrier exemption to FLSA.

### 1.     Practical continuity of movement in interstate commerce.

The first way Defendants attempt to satisfy the interstate commerce prong of the motor carrier exemption is by showing that Jones's "[p]urely intrastate transportation" was "part of a 'continuous stream of interstate travel.'" *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1229 (11th Cir. 2009); 29 C.F.R. § 782.7(b)(1) ("Transportation within a single State is in interstate commerce within the meaning of [FLSA] where it forms a part of a 'practical continuity of movement' across State lines from the point of origin to the point of destination."). Defendants argue that Jones's transportation of finished products to a storage facility for a short period of time while the products awaited shipment to an ultimate customer qualifies. But Defendants have offered no evidence to support their contention that any of the products Jones transported were ever moved out of Kentucky. Notably, Nelson's affidavit, which refers to "fully finished product[s]" and "ultimate customer[s]," makes no mention of *where* the "shocks and struts" Jones transported ended up–and Defendants point to no record evidence to answer that question. (Doc. # 28-1 at ¶¶ 13-15). Vague references to products and customers, divorced from any geographical specificity, do not establish that the materials Jones transported were in a continuous stream of interstate travel.

### 2.     Reasonable expectation of travel in interstate commerce.

The second way Defendants attempt to establish a link to interstate commerce is by

12

showing that in the regular course of his job, Jones reasonably expected to make one of L&G's interstate trips.  29 C.F.R. § 782.2(b)(3); *Morris v. McComb*, 332 U.S. 422, 432-33 (1947).  In *Morris v. McComb*, the Supreme Court held that, although less than 4% of the trips by a general motor carrier business were interstate, the exemption applied to drivers because "in the normal operation of the business, these strictly interstate commerce trips were distributed generally throughout the year and their performance was shared indiscriminately by the drivers . . . and was thus a natural, integral, and apparently inseparable part" of the drivers' jobs.  *Id.*  "The Supreme Court noted that, in practical terms, the safety concerns facing a carrier who sent *every* driver on an interstate trip would be the same if the carrier sent only *some or most* of its drivers on interstate trips."  *Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 474 (5th Cir. 2010) (citation omitted).  "Therefore, the [Interstate Commerce Commission, the predecessor to the DOT] had the power to regulate all of defendant's drivers, and the *existence*–rather than the *exercise*–of that power was the test as to whether the employees were entitled to overtime pay under the FLSA."  *Id.*  Accordingly, Plaintiff himself agrees that a driver who makes no interstate trips in a particular time period can still be subject to the DOT's jurisdiction, and therefore the motor carrier exemption, if the driver could reasonably expect to make one of the employer's interstate trips.  (Doc. # 38 at 9 (citing Federal Highway Administration Notice of Interpretation, 46 Fed. Reg. 37,902 (1981)); *see also Finney v. Free Enter. Sys., Inc.*, No. 3:08-cv-383, 2012 WL 5462971, at *4-5 (W.D. Ky. Nov. 8, 2012).

The facts put forth by the parties diverge sharply on this point.  First, the parties disagree about when Jones drove from Kentucky to Missouri.  Although no interstate trip is required for the motor carrier exemption to apply, whether one occurred within the six

months at issue here could shed light on whether such a trip was "reasonably expected." Jones claims that he volunteered to drive to St. Louis, Missouri, on August 30, 2013 (right after the period for which he seeks overtime pay).  In support, Jones provides his own declaration (Doc. # 38-1 at ¶ 19) and a driver's log from August 31, 2013 reflecting a trip from Kentucky to several cities in Missouri (though not St. Louis) (Doc. # 25-7).  Caldwell and Nelson assert in their affidavits that Jones took an interstate trip to Kansas City, Missouri, and that the trip occurred within "approximately 3 months" of Jones's initial employment (putting it around May or June).   (Doc. # 28-1 at ¶ 8; 28-2 at ¶ 15). Defendants produced no documentation of a May or June trip, despite agreeing that such a trip would generate paperwork.  (Doc. # 38-2 at 8).  A different L&G employee "[could] not recall a single instance between February 2013 and June 2013" when Jones drove an interstate trip.  (Doc. # 38-3 at ¶ 15).  The disagreement about the Missouri trip is just one example of the factual disputes in this case.  But even if Jones took no interstate trip until August 31, Defendants still raise sufficient facts to dispute whether he had a reasonable expectation of travel in interstate commerce as part of his job.  *See Wells v. A.D. Transp. Express, Inc.*, No. 15-cv-11324, 2016 WL 3213396, at *5 (E.D. Mich. June 10, 2016) ("actual driving need not necessarily occur in order for the driver to be exempt; the exemption begins the date the driver could have been called up on to, or actually did, engage in the carrier's interstate activities") (collecting cases).

On that point, too, the evidence diverges about how common it is for drivers like Jones to drive interstate routes.  Defendants say that it is "not uncommon" for Berea drivers, like Jones, to be ordered to make out-of-state drives, and that it happens "on a frequent basis."  (Doc. # 28-1 at ¶ 10; Doc. # 28-2 at ¶ 9).  In fact, Defendant Caldwell

14

asserts that "every driver who has serviced the Berea area has been called upon and ordered to take an out of state load at some point during their employment." (Doc. # 28-2 at ¶ 12).[3]  On the other hand, Jones and Philbeck maintain that Jones was specifically assigned to Berea and that there were "few opportunities" for interstate routes. (Doc. # 38-1 at ¶ 7; Doc. # 38-3 at ¶ 8).  Plaintiff argues that any expectation of interstate driving was *de minimis*, and that therefore the exemption does not apply. (Doc. # 38 at 10-11).  But whether the expectation was actually *de minimis* is exactly the factual question that precludes summary judgment–according to Defendants' affidavits, the interstate driving was "not uncommon," "frequent," and part of Jones's job description.

*Reich v. American Driver Service*, a Ninth Circuit case cited by Plaintiff, is not to the contrary.  The *Reich* court held that, where an employer is not engaging in interstate commerce *at all* for a period of several months, its drivers are not exempt from FLSA's overtime provisions during that time even though the drivers could expect to re-enter interstate commerce as soon as their employer did.  *Reich v. Am. Driver Serv., Inc.*, 33 F.3d 1153, 1157 (9th Cir. 1994).  By contrast, here, Defendants offer undisputed evidence that L&G drivers actually engaged in interstate commerce at all relevant times. (Doc. # 28-2 at ¶¶ 4-5).  *Reich* is of no help to Plaintiff.

---

3    Plaintiff objects to Defendants' characterization of the frequency of interstate travel under Federal Rule of Evidence 1002, which requires that an original writing be provided in order to prove its content.  (Doc. # 38 at 8-9 n.4 (citing Fed. R. Evid. 1002)).  Plaintiff's argument is that, because the out of state trips must be documented, Defendants must rely on those documents to discuss the trips' frequency.  That objection is overruled.  Although the most persuasive evidence to prove Defendants' ultimate contention may be documentary evidence, Defendants are not attempting to prove the content of the documents as Rule 1002 requires.  *See O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 598 (6th Cir. 2009) (Rule 1002 does not bar statements in an affidavit about hours worked even when time sheets were available).  Instead, Defendants are describing facts within their personal knowledge as owner and manager of L&G, which is not prohibited by Rule 1002.

There are also factual disputes regarding whether the possible interstate trips were voluntary or mandatory.  Whether the trips were voluntary or mandatory could help show if interstate trips were a "natural," "integral," and "inseparable" part of Jones's job, as in *Morris*, or merely a remote possibility insufficient to trigger DOT jurisdiction.  *Morris*, 332 U.S. at 433; *see also Walters v. Am. Coach Lines of Miami, Inc.*, 569 F. Supp. 2d 1270, 1294-95 (S.D. Fla. 2008), *aff'd*, 575 F.3d 1221 (11th Cir. 2009) (finding a "factual issue" about whether university shuttle bus drivers "could reasonably be expected to drive routes in interstate commerce" where the drivers "may be asked to do general charter work" but "are not required to perform these assignments").  Plaintiff claims that interstate trips were taken voluntarily.  (Doc. # 38-1 at ¶ 7).  Defendants claim that interstate trips could not be refused.  (Doc. # 28-2 at ¶ 10).  The Court cannot resolve this dispute on summary judgment.

There is additional evidence that could be relevant to the likelihood of interstate trips, but all of it is disputed.  Jones asserts that he was not required to keep a DOT-compliant log book, which suggests he was not subject to DOT's jurisdiction and therefore falls outside the exemption.  (Doc. # 38-1 at ¶ 14).  But Defendants argue that they followed DOT rules in hiring Jones and other drivers, which suggests that the exemption applied. (Doc. # 28-2 at ¶¶ 19-22).[4]

The inescapable conclusion is that there is some evidence on each side of the scales, and the Court cannot decide which side weighs more at this stage.  For the same

---

4    Defendants' argument that Jones's claim should be denied because he was not an hourly worker and had no expectation of overtime pay (Doc. # 28 at 16) is without merit. Defendants do not even attempt to explain how those facts relate to FLSA's requirements or the motor carrier exemption.

reasons that summary judgment is not available to Plaintiff, it is not available to Defendants either.  Neither side can show that there are no disputes of material fact or that they are entitled to summary judgment as a matter of law.  It must be left to the trier of fact to weigh the credibility of Plaintiff and Defendants' characterizations of Plaintiff's duties.

Accordingly,

**IT IS ORDERED** as follows:

1.      Plaintiff's Motion for Summary Judgment (Doc. # 25); Defendants' Cross-Motion for Summary Judgment (Doc. # 29); and Plaintiff's Motion to Strike (Doc. # 30) are **DENIED**; and

2.      **Within twenty (20) days from the date of the entry of this Order**, the parties shall file a **joint status report** setting forth mutually agreed available dates for a final pretrial conference and trial, and whether they would be amenable to a court-facilitated settlement conference.

This 29th day of March, 2017.



Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\Opinions\London\15-40 Jones v. L&G Trucking MSJ MOO.wpd

17